IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JACQUELINE L. CONNERS, WHITNEY KOCH,
KATEY TILLER, RACHELLE HOBBS, MARIA CAMPANELLI,
SARINA ELLIS, LACIE MORGAN, CECILIE WASHBURN
AND BLAIRE LARSON individually and
on behalf of all others similarly-situated                      PLAINTIFFS

     v.                                CASE NO. 4:14-cv-002 BSM

GUSANO'S CHICAGO STYLE PIZZERIA
n/k/a KENNEDY'S PIZZERIA, INC.;
CATFISH PIES, INC.; CRAZY PIES, INC;
FAYETTEVILLE PIES, INC.;
GUSANO'S CHICAGO STYLE PIZZERIA OF BELLA VISTA, INC.;
HENDRIX BRANDS, INC.; PIZZA PROFITS, INC.;
SHOW ME PIES, INC.; CLEARWATER SOCIAL CLUB, INC. d/b/a
GUSANO'S CHICAGO-STYLE PIZZERIA OF CONWAY #1, INC.
THREE BUDDIES INCORPORATED;
TIMOTHY CHAPPELL and BEN BIESENTHAL


                                                                                                               DEFENDANTS

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RENEWED
MOTION FOR CONDITIONAL CLASS CERTIFICATION
AND COURT-AUTHORIZED NOTICE**

**I. INTRODUCTION**

This is a collective action under the Fair Labor Standards Act for wages owed. Gusano's Chicago-Style Pizzeria is a bar-and-restaurant chain with locations in Arkansas and Missouri. Gusano's forces its wait staff to pay a kick back of between 2% to 4% of their gross sales to the restaurant at the end of each shift as a tip share. This money is used, among other things, to pay kitchen staff. Any money left in the tip pool

is retained by Gusano's. All servers at each of the locations were subject to the same policy.

Because Gusano's requires its servers to share tips with kitchen staff and also retains funds from the tip pool, Gusano's tip-pooling policy violates the Fair Labor Standards Act. Gusano's is not eligible to take the tip credit to satisfy its obligation to pay a minimum wage. Gusano's is liable to each server for the difference between the full federal minimum wage and the cash wage paid by Gusano's. Plaintiffs bring this suit individually and on behalf of others similarly situated to recover the minimum wages owed by law, liquidated damages, attorneys' fees and expenses, and all other relief allowed by law. They seek conditional certification of a collective action and distribution of court-approved notice.

## II. STATEMENT OF FACTS

Plaintiffs are former servers of Gusano's, a sport-bar-and-restaurant chain. Gusano's has six corporate-operated locations in Arkansas and Missouri.[1] To date, 10 Plaintiffs, who worked at 5 of Gusano's 6 locations, have joined this litigation. Jackie Conners worked at the Conway location, (*Conners Dec.* [Ex. D] ¶ 2), Whitney Koch worked at the Bentonville location from 2008 until 2012, (*Koch Dec.* [Ex. E] ¶ 2), and Rachelle Hobbs worked at the Little Rock location. (*Hobbs Dec.* [Ex. F] ¶ 2). Lacie Morgan and Katey Tiller both worked at the Joplin location. (*Morgan Dec.* [Ex. G] ¶ 2; *Tiller Dec.* [Ex. H] ¶ 2). Maria Campenelli worked at the Bentonville location, and she

---

[1] In addition, Gusano's had franchise locations in Tulsa, Oklahoma, and Texarkana, Texas. At this time, Plaintiffs do not allege that they are similarly situated to servers at the Tulsa or Texarkana franchises, but they reserve the right to do so in the future.

also covered a shift at the Fayetteville location. (*Campanelli Dec*. [Ex. I] ¶ 2).

### A.  *Gusano's Corporate Structure.*

Each Gusano's location is nominally owned by a separate legal entity as follows: Catfish Pies, Inc. operates the Conway location (Doc. 32, at ¶ 10); Pizza Profits, Inc. operates the Bentonville location (Doc. 32, at ¶ 14); Crazy Pies, Inc. operates the Bella Vista Location (Doc. 32, at ¶ 11); Fayetteville Pies, Inc. operates the Fayetteville location (Doc. 32, at ¶ 12); Show Me Pies, Inc. operates the Joplin location (Doc. 32, at ¶ 15); and Hendrix Brands, Inc. operates the Little Rock location (Doc. 32, at ¶ 13). Gusano's Chicago Style Pizzeria of Bella Vista, Inc. is a nonprofit that owns the private club liquor permit for the Bella Vista location, and Clearwater Social Club, Inc. owns the same for the Conway location. (Doc. 32, at ¶¶ 17–18). Gusano's Chicago Style Pizzeria or "Kennedy's Pizzeria" holds the liquor permit for the Bentonville location. (Doc. 32, at ¶ 16). Three Buddies Incorporated owns the licensing of the "Gusano's" brand and otherwise provides services to each of the locations. (Doc. 32, at ¶ 36).

Until October 2013, each of the corporate entities was owned, at least in part, by individual defendants Ben Biesenthal and Timothy Chappell. Since that time, Chappell sold all of his interest in all of the corporate entities except Hendrix Brands, Inc., which operates the Little Rock location. Likewise, Biesenthal relinquished all of his interest in Hendrix Brands, Inc. or its corporate predecessor making Chappell the sole owner of the Little Rock location. The Little Rock location is now operated through a license provided by Three Buddies, Inc. Biesenthal continues to have an ownership interest in each of the other corporate defendants.

B.     *Gusano's Tip-Pooling Policy.*

At all Gusano's locations, all servers are required to kick back a certain percentage of their sales to the restaurant into a tip pool as part of "Gusano's Tip Pooling Policy." (*Employee Manual* [Ex. B] at *6; *Agreement* [Ex. C]; *Conners Dec.* [Ex. D] ¶ 6; *Koch Dec.* [Ex. E] ¶ 5; *Hobbs Dec.* [Ex. F] ¶ 5; *Morgan Dec.* [Ex. G] ¶ 5; *Tiller Dec.* [Ex. H] ¶ 6). The restaurant distributed some of the funds from this tip pool to kitchen staff. (*Employee Manual* [Ex. B] at *6; *Agreement* [Ex. C]; *Conners Dec.* [Ex. D] ¶ 7; *Koch Dec.* [Ex. E] ¶ 6; *Hobbs Dec.* [Ex. F] ¶ 6; *Morgan Dec.* [Ex. G] ¶ 6; *Tiller Dec.* [Ex. H] ¶ 7). When money was left in the tip pool, Gusano's kept the money. (*Morgan Dec.* [Ex. G] ¶ 6).

The policy was the same at all of Gusano's locations. As stated in the employee handbook, wait staff were required to "tip-out" a percentage of their sales to kitchen, hostess, and bartender. The handbook stated:

> Wait staff must claim their tips to the manager when checking out. Also, when checking out **wait staff must "tip out" a percentage of their sales to kitchen, hostess & bar staff**. The percentages and which staff members that will be tipped out will be further explained to you by your manager. This is subject to change at any time. You will also receive a Tip Pooling Agreement form that covers this information as well.

(*Employee Manual* [Ex. B] at *6) (emphasis added).

Although waitstaff are required to pay the tip out, Gusano's is not required to distribute the tip out. As explained to cooks, hostesses, and bartenders "Tip out is a privilege, it is not a requirement." (*Employee Manual* [Ex. B] at *6). Management reserves the right to take away tip out "completely, individually, or collectively." (*Id.*).

At some point, Gusano's required waitresses to sign "Gusano's Tip Pooling

Agreement." (*Agreement* [Ex. B]). The Agreement states, "I am in agreement with **Gusano's Tip Pooling Policy**; tipping out a customary percentage of my sales from each shift to the **kitchen,** hostess, & or bartender." (*Id.*) (emphasis added). On the form Plaintiff Jackie Conners signed, someone crossed out the typewritten location stating "Joplin" and wrote "Conway." (*Id.*).

After the lawsuit was filed, five of the Gusano's locations (Joplin, Bella Vista, Bentonville, Fayetteville, and Conway) issued a five-page "Agreement to Arbitrate Disputes" that purports to make claims of putative class members subject to arbitration. (Doc. 34-1). In a memorandum section, under the heading "Is the Agreement to Arbitrate Disputes Right for Me?," this litigation is referenced. (*Id.*). Nowhere, however, does the memorandum or Arbitration Policy inform employees that they may have the right to join in this lawsuit. (*Id.*). On March 10, 2014, this Court held that Defendants could not enforce the agreement against those employees who may want to join this litigation. (Doc. 57.) Defendants appealed this decision to the United States Court of Appeals to the Eighth Circuit, and that appeal is pending. (Doc. 67.)

### III. LEGAL STANDARD

*A.     The FLSA's Two-Stage Certification Process.*

The FLSA authorizes collective actions for "similarly situated" employees to recover damages for its violations. *Ford v. Townsends of Ark., Inc.*, No. 4:08-cv-00509, 2010 U.S. Dist. LEXIS 46093, at *8 (E.D. Ark. Apr. 9, 2010). "These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Id.* Although the Eighth Circuit has not clearly defined the phrase

"similarly situated," this Court and others within this District apply a two-step approach to determine whether a class is similarly situated. *Id.* at *8. The first step is the "notice stage," and the second step is an "opt-in" merits stage. *Id.*

A class is similarly situated at the notice stage if plaintiffs make a modest factual showing, based on the pleadings and affidavits, that the proposed class members were victims of a single decision, policy, or plan. *Id.* Class members need not be identically situated. *Id.* Indeed, the Eleventh Circuit has described the standard for this first stage as "'not particularly stringent,' 'fairly lenient,' 'flexib[le],' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (internal citations omitted).

The second stage comes after discovery is largely completed and is prompted by a defendant's motion to decertify. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). At the second stage, the court then uses a stricter standard to determine whether the putative class members are similarly situated and whether the trial should proceed collectively. *Id.* To maintain a class at the second stage, plaintiffs must show that they are similarly situated with respect to their job requirements and pay provisions. *Id.* "Courts will consider three factors at this second stage: (1) the employment and factual settings of the plaintiffs; (2) the various defenses available to the defendants; and (3) considerations of fairness, procedure, and manageability." *Id.* (citing *Butterball*, 2009 U.S. Dist. LEXIS 116460, at *6).

B.   **FLSA Tip Credit.**

Under the Fair Labor Standards Act, employees are entitled to a minimum wage

of $7.25 per hour. For tipped employees, however, the employer is able to take advantage of a "tip credit" to satisfy its obligations under the FSLA. 29 U.S.C. § 203(m). To take the tip credit, the employer must meet all the statutory requirements. An employer taking the tip credit must: (1) inform the employee about the FLSA's tip-credit provisions; and (2) either allow employees to retain all tips or have a valid tip-pooling arrangement. 29 U.S.C. § 203(m). If the employer chooses to run a tip pool (as opposed to letting servers keep all of their tips), tip pools can only include employees who customarily and regularly receive tips. 29 C.F.R. § 531.54. If non-tipped employees, such as cooks or dishwashers, participate in the tip pool, the employer is ineligible for the tip credit. *See Rubio v. Fuji Sushi & Teppani, Inc.*, 2013 U.S. Dist. LEXIS 8469, *6-7 (M.D. Fla. Jan. 22, 2013); *see also* DOL FOH 30d04(c) [Ex. J].

Similarly, the employer cannot retain any portion of the tip pool. 29 C.F.R. § 531.54; *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 884 (D. Md. 2011) (granting Plaintiffs' motion for summary judgment and stating, "Every court that has considered the issue has unequivocally held that the FLSA expressly prohibits employers from participating in employee tip pools."). "Where an employer does not strictly observe the provisions of Sec 3(m), no tip credit may be claimed and the employees are entitled to receive the full cash MW, in addition to any tips they may have received." DOL FOH 30d01(b) [Ex. J].

## IV. ARGUMENT

### A. The Court Should Conditionally Certify a Class of All Servers Who Worked for Gusano's Within the Past Three Years.

All of Gusano's servers are similarly situated and should be invited to join this action. At the notice stage, plaintiffs must only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Ford*, 2010 U.S. Dist. LEXIS 46093, at *8. In making this determination, courts should consider whether there is evidence that the individual plaintiffs had similar "factual and employment settings" and whether there was a "common policy or plan" that affected the potential plaintiffs. *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012) (quotations omitted).

Gusano's has a clear, "single decision, policy, or plan," which applies to all of its servers at all of its locations. The Policy is plainly stated in Gusano's employee manual. According to the written policy, wait staff were required to "tip-out" a percentage of their sales to kitchen, hostess, and bartender. (*Employee Manual* [Ex. B] at *6).[2] Likewise, the Employee Manual expressly states that Gusano's controls the distribution of funds from the "tip out." *Employee Manual* [Ex. B] at *6) (emphasis added).

---

[2] In the Biesenthal Defendants' response to Plaintiffs' emergency motion for conditional certification, they argued that the tip-pooling is not unlawful because it was "voluntary." (Doc. 41, at *9–10). First, it is not proper to look to the merits when deciding conditional certification. *E.g. Cruz v. Lawson Software, Inc.*, No. 08-5900, 2009 U.S. Dist. LEXIS 130882, at *22 (D. Minn. Mar. 31, 2009). Nevertheless, as the handbook clearly states that servers are *required* to tip out the kitchen staff, the argument has no merit.

Simply put, Gusano's forces all of its servers to kick back a percentage of their gross sales to the restaurant. (*Employee Manual* [Ex. B] at *6; *Policy* [Ex. C]; *Conners Dec.* [Ex. D] ¶¶ 6-7; *Koch Dec.* [Ex. E] ¶¶ 5-6; *Hobbs Dec.* [Ex. F] ¶¶ 5-6; *Morgan Dec.* [Ex. G] ¶¶ 5-6; *Tiller Dec.* [Ex. H] ¶¶ 6-7). That kick back is shared with cooks, and any money remaining in the fund is kept by Gusano's. (*Policy* [Ex. B]; *Conners Dec.* [Ex. C] ¶¶ 6-7; *Koch Dec.* [Ex. D] ¶¶ 5-6; *Hobbs Dec.* [Ex. E] ¶¶ 5-6; *Morgan Dec.* [Ex. F] ¶¶ 5-6; *Tiller Dec.* [Ex. G] ¶¶ 6-7). It is undisputed that this policy was in effect at each of the Gusano's locations, at least up until the filing of this action.

The uniform nature of a tip-pooling policy makes the case especially appropriate for class treatment. Indeed, conditional certification has been commonly granted in tip-pooling cases, including cases dealing with multiple locations or franchises. *See, e.g., Schear v. Food Scope Am., Inc.*, No. 12 Civ. 594, 2014 U.S. Dist. LEXIS 3454 (S.D.N.Y. Jan. 10, 2014); *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 20, 2013); *Alequin v. Darden Rests., Inc.*, No. 12-61742, 2013 U.S. Dist. LEXIS 99458, at *18–19 (S.D. Fla. July 12, 2013); *White v. 14051 Manchester, Inc.*, No. 4:12CV469, 2012 U.S. Dist. 170052 (E.D. Mo. Nov. 30, 2012) (conditional certification even among different franchises); *Hardesty v. Litton's Mkt. & Rest. Inc.*, No. 3:12-CV-60, 2012 U.S. Dist. LEXIS 180448 (E.D. Tenn. Sept. 28, 2012); *Torres v. Cache Cache, Ltd.*, No. 12-cv-00150, 2012 U.S. Dist. LEXIS 180937 (D. Colo. Dec. 21, 2012); *Morris v. R.A. Popp. Enters.*, No. 8:11CV263, 2012 U.S. Dist. 19273 (D. Neb. Jan. 20, 2012) (granting conditional certification for wait staff at multiple locations); *Eggelston v. Sawyer Sportsbar, Inc.*, No. 4:09-3529, 2010 U.S. Dist. LEXIS 65022 (S.D. Tex. June 28, 2010);

*Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693 (W.D. Tex. 2009); *Scherrer v. S.J.G. Corp.*, No. A-08-CA-190-SS, 2008 U.S. Dist. LEXIS 111633 (W.D. Tex. Oct. 10, 2008). Moreover, Courts have even certified tip-pooling cases based on the more stringent Rule 23 requirements. *See, e.g.*, *Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011); *Schear v. Food Scope Am., Inc.*, No. 12 Civ. 594, 2014 U.S. Dist. LEXIS 3454, at *15–27 (S.D.N.Y. Jan. 10, 2014).

Plaintiffs have made a modest factual showing that all were victims of a single decision, policy, or plan. Through affidavits and written documents, Plaintiffs have shown that Gusano's Tip Pooling Policy required all servers to kick back a percentage of sales to the restaurant after each shift. The restaurant manager distributed this tip pool to kitchen staff, among other employees. And any money remaining in the tip pool was kept by the restaurant. All Gusano's servers at the Little Rock, Conway, Fayetteville, Bentonville, Bella Vista, and Joplin locations are similarly situated and should be permitted to join this litigation.

    **B.**    ***The Court Should Provide Notice to Putative Class Members.***

The Supreme Court of the United States determined that district courts have the authority to manage the process of joining multiple parties, consider a motion for conditional certification, and issue court-approved notice in the 'appropriate case.' *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). According to the Supreme Court of the United States, determining what is an "appropriate case" lies within the "discretion" of the district court. *Id.* at 170. The benefits to the judicial system of FLSA collective actions "depend upon employees receiving accurate and timely notice

concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* District courts are encouraged to become involved in the notice process early to insure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id.* at 171–72. This is an appropriate case for court-approved notice.

Here, prompt Court action is needed because the claims of the putative class members are being extinguished or diminished due to the running of the statute of limitations on their claims. *See Redman v. U.S. W. Bus. Res.*, 153 F.3d 691, 695 (8th Cir. 1998); *Hoffmann v. Sbarro*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996). As a result, the statute of limitations continues to run on each individual's claim until they file a consent form with the Court. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696, at *2 (M.D. Tenn. Apr. 10, 2008). The consequence of this fundamental difference is self-evident; every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover.

Plaintiffs' proposed notice, attached as Exhibit "A," has been carefully drafted to mirror other judicial notice forms that have been approved by courts around the country. It is narrowly drawn to notify potential class members of the pending litigation, the composition of the class, their right to "opt in" to the litigation, the effect of their doing so or not, and the procedure for doing so. It makes no comment whatsoever on the merits of the case. As required, it is "timely, accurate, and

informative*." See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted.

Plaintiffs propose that to be timely, potential opt-in plaintiffs must return to Plaintiffs' counsel their signed consent forms, received or postmarked within 90 days after the date on which the Notice and Opt-In Consent Forms are mailed. Plaintiffs' counsel will file the Opt-In Consent Forms with the Court on an ongoing basis and no later than two weeks after the end of this 90-day notice period.

### C. The Court Should Order Defendants to Produce the Names and Addresses of the Putative Class Members to Carry Out Notice.

As discussed above, all non-exempt servers who were employed by Gusano's at their locations in Conway, Little Rock, Bella Vista, Bentonville, and Fayetteville, and Joplin since January 2, 2011, are "similarly situated" for purposes of the FLSA. Thus, their identification to Plaintiffs is necessary in order to provide them with notice of the action as contemplated by the law. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This is precisely the reason why the production of a mailing list containing potential class members is routinely required in FLSA collective actions; such lists are necessary to facilitate notice. *Id.* at 165. *Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *2; *Henry v. Quicken Loans Inc.*, No. 04-40346, 2006 U.S. Dist. LEXIS 70220, at *7 (E.D. Mich. Sept. 28, 2006) ("Having granted conditional class certification to Plaintiffs, this Court has the discretion to compel the production of the list of loan consultants in order to facilitate notice."). Moreover, the identity of putative class members is discoverable on other

grounds. *See Hoffmann-LaRoche*, 493 U.S. at 170 (acknowledging the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter"); *Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 U.S. Dist. LEXIS 42047, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly-situated employees in order to define the proposed class).

If this Court grants Plaintiffs' motion, the Court should also order Gusano's to provide Plaintiffs a list of all putative class members necessary to carry out notice. This list should contain the last known contact information for each putative class member, including for each his/her name, last known address, telephone number, dates of employment, and email address.

The Court should also require Gusano's to post notice of this lawsuit at the relevant workplaces and include the notice in the employees' next paycheck in addition to mailing notice. *Garcia v. Salamanca Grp.*, No. 07C4665, 2008 U.S. Dist. LEXIS 22852, at *5 (N.D. Ill. March 24, 2008) (authorizing notice to be sent by mail and posted at defendant's restaurants); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (finding that first class mail combined with posting provided for the "best notice practicable" to the potential class).

## V. CONCLUSION

Plaintiffs have provided adequate evidence to meet their lenient burden of showing they were victims of a common policy. At each Gusano's location, servers were required to participate in a tip pool, and funds from the tip pool were distributed

to non-tipped employees and also kept by the restaurant. All of Gusano's servers at their Arkansas and Missouri locations are similarly situated. The Court should:

- Grant Plaintiffs' renewed motion for conditional certification;

- Approve Plaintiffs' proposed notice and authorize its mailing; and

- Order Defendants to produce the names and addresses of class members within 10 days of the order granting conditional certification.

        Respectfully submitted,

        /s/ Timothy A. Steadman
        John T. Holleman – AR Bar #91056
        jholleman@johnholleman.net
        Maryna O. Jackson – AR Bar #2009111
        maryna@johnholleman.net
        Timothy A. Steadman
        tim@johnholleman.net
        HOLLEMAN & ASSOCIATES, P.A.
        1008 West Second Street
        Little Rock, Arkansas 72201
        Tel. 501.975.5040
        Fax 501.975.5043

**CERTIFICATE OF SERVICE**

  I, Timothy A. Steadman, certify that a true and accurate copy of the foregoing document was sent via CM/ECF on this 1st day of July, 2014 to the following:

 Scott Jackson (sjackson@kutakrock.com)
 E. B. Chiles IV (cchiles@qgtb.com)
 Joseph R. Falasco (jfalasco@qgtb.com)
 Amber Davis-Tanner (adtanner@qgtb.com)

            /s/ Timothy A. Steadman
            Timothy A. Steadman